UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IVY SOCIETY SPORTS GROUP, LLC,

        Plaintiff,

        v.

BALONCESTO SUPERIOR NACIONAL,
FEDERACIÓN DE BALONCESTO DE PUERTO
RICO, and FELIX RIVERA, an individual,

        Defendants.

08 Civ. 8106 (PGG)

**MEMORANDUM
OPINION AND ORDER**

PAUL G. GARDEPHE, U.S.D.J.:

        Defendants Baloncesto Superior Nacional ("BSN") and Federación de Baloncesto de Puerto Rico (the "Federation") have moved to transfer this action to the District of Puerto Rico, pursuant to Title 28, United States Code, Section 1406(a) or, in the alternative, Title 28, United States Code, Section 1404(a). For the reasons stated below, Defendants' Section 1404(a) motion is GRANTED.

**BACKGROUND**

        Plaintiff Ivy Society Sports Group ("Ivy") is a New York limited liability corporation with its principal place of business in New York. (Cmplt. ¶ 8) BSN and the Federation are not-for-profit corporations organized and existing pursuant to the laws of the Commonwealth of Puerto Rico, each with its principal and only place of business in Puerto Rico. (Transfer Mot. ¶¶ 1, 3) BSN operates a men's professional basketball league in Puerto Rico, while the Federation – with which BSN is affiliated – is the rule-making body for organized basketball in Puerto Rico. (Neumann Decl. ¶¶ 3, 5–6)

In October 2005, Ivy and BSN entered into a two-year representation agreement, under which BSN appointed Ivy "as its agent for the purpose of representation and negotiation of licenses (shoe, apparel, and merchandising) originating outside of Puerto Rico." (Cmplt., Ex. A ("Representation Agreement") ¶¶ 1–2)  The Representation Agreement requires BSN to pay Ivy a "fee equal to 35% of any agreement [Ivy] consummates on behalf of . . . BSN or negotiates in principle and [that] BSN then consummates after [Ivy] has been terminated." (Id. ¶ 3)

Ivy has sued BSN for breach of contract.  Ivy alleges that it fully performed under the agreement by negotiating in principle a contract that BSN ultimately consummated with Nike USA, Inc. ("Nike") and its Brand Jordan Division,[1] and that BSN failed to compensate Ivy. (Cmplt. ¶¶ 44–45)

Ivy has also sued the Federation and Felix Rivera, a former president of BSN, for tortious interference with the Representation Agreement.[2]  Ivy alleges that these defendants were aware that the Representation Agreement did not expire until at least October 2007, and that they improperly procured BSN's breach of that agreement in September 2007. (Cmplt. ¶¶ 53, 55)  Specifically, Ivy alleges that Rivera advised Brand Jordan in September 2007 that Ivy no longer represented BSN. (Id. ¶¶ 32, 53)  Additionally, Ivy alleges that the president of the Federation, Hectin Reyes, advised Todd Washington, a consultant for the Federation, to work only with Rivera, not Ivy, when negotiating a sponsorship agreement with Brand Jordan. (Id. ¶¶ 33, 55)

## DISCUSSION

Defendants BSN and the Federation argue that this action should be transferred to the District of Puerto Rico under Title 28, United States Code, Section 1406(a) because they are

---

[1] Nike is an Oregon corporation with its principal place of business in Beaverton, Oregon. (Transfer Mot., Ex. 1 ("BSN-Nike Agreement") at 1).

[2] Although Rivera is named as a defendant in the Complaint, he has never been served.

not subject to personal jurisdiction in New York, and venue is improper in New York. Alternatively, Defendants move to transfer pursuant to Title 28, United States Code, Section 1404(a) because this action could have been brought in Puerto Rico and transfer is in the interest of justice.  Defendants argue that most of the witnesses for the contract claim and all of the witnesses for the tort claim are in Puerto Rico, and that the locus of operative facts is in Puerto Rico.  Plaintiff contends that the action should remain in New York because its choice of forum is entitled to substantial deference, witnesses would be inconvenienced by a transfer, Defendants have greater resources to litigate this action than Plaintiff, and – given that New York law applies – this Court's familiarity with the governing law favors retention.

Transfer to the District of Puerto Rico is appropriate here because (1) the case "might have been brought" in that district; (2) the locus of operative facts is in that district; (3) critical non-party witnesses are located in that district; and (4) the remaining "interest of justice" factors are either neutral or do not strongly favor retaining this action in the Southern District of New York.

## I.    PERSONAL JURISDICTION

In moving to transfer venue, Defendants BSN and the Federation suggest that this Court may lack personal jurisdiction over the Federation (and Rivera).  (See Defs. Br. ¶ 21)  The Federation has not moved to dismiss for lack of personal jurisdiction, however.  See Notice of Motion, Docket No. 24 (seeking only transfer under 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a)).  Because the Federation has chosen not to litigate the issue of personal jurisdiction, there is no basis for this Court to find that it lacks jurisdiction over the Federation.  See Zito v. Leasecomm Corp., No. 02 Civ. 8074 (GEL), 2003 WL 22251352, at *21 n.8 (S.D.N.Y. Sept. 30, 2003) (declining to rule on personal jurisdiction where defendants had "asserted lack of personal

jurisdiction as a defense in their answers, but ha[d] not moved for dismissal on those grounds at this stage").  Moreover, given that this Court's January 12, 2009 order directed Defendants BSN and the Federation to "move to dismiss, or in the alternative, to transfer this action to the District of Puerto Rico" by "serv[ing] moving papers, if any, by Tuesday, January 20, 2009" (Docket No. 13), and that Defendants BSN and the Federation only filed a motion to transfer, these defendants have waived any personal jurisdiction objections.  Fed. R. Civ. P. 12(h)(1)(A) ("A party waives any defense listed in Rule 12(b)(2)-(5) by omitting it from a motion in the circumstances described in Rule 12(g)(2). . . .").  See Computer Express Int'l, Ltd. v. MicronPC, LLC, No. 01 Civ. 4801, 2001 WL 1776162, at *4 (E.D.N.Y. Dec. 21, 2001) (concluding, where defendant Micron had moved to dismiss or transfer for improper venue, that "[b]y failing to move to dismiss for lack of personal jurisdiction . . . Micron has conceded that it is subject to personal jurisdiction in this district.") (emphasis in original) (citing Fed. R. Civ. P. 12(g), (h)(1)).  See also Pilgrim Badge & Label Corp. v. Barrios, 857 F.2d 1, 3 (1st Cir. 1988) (defendant "waived the defense of lack of personal jurisdiction by failing to raise the defense in his motion to dismiss") (citing Fed. R. Civ. P. 12(g), (h)).

With that backdrop, this Court turns to the transfer motion filed by BSN and the Federation.

## II.   MOTION TO TRANSFER

Defendants BSN and the Federation have moved to transfer pursuant to Title 28, United States Code, Section 1406(a) or, in the alternative, under Title 28, United States Code, Section 1404(a).  Section 1406(a) provides that, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28

U.S.C. § 1406(a). Section 1404(a) states that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

Under either venue statute, the threshold inquiry is whether the action could have been brought in the proposed transferee district. Because resolution of the transfer issue under Section 1404(a) is dispositive in this case, this Court need not determine whether transfer is also appropriate under Section 1406(a).[3]

### A. Whether This Action Might Have Been Brought in Puerto Rico

This action could have been brought in the District of Puerto Rico. In Hoffman v. Blaski, 363 U.S. 335, 342 (1960), the Supreme Court ruled that in considering where an action "might have been brought," the district court must look to the state of affairs "at the time of the bringing of the action." That is, subject matter jurisdiction, personal jurisdiction, and venue would have had to have been proper in the transferee court at the time the action was filed. See Posven, C.A., 303 F. Supp. 2d at 401 ("For the purposes of section 1404(a), an action might have been brought in another forum if, at the time the action was originally filed, the transferee court would have had subject matter jurisdiction and personal jurisdiction over the defendants, and if venue would have been proper in the transferee court.").

---

[3] Personal jurisdiction and proper venue are not prerequisites for granting a motion to transfer under Section 1404(a), because this Court "'has power to transfer the case even if there is no personal jurisdiction over the defendants, and whether or not venue is proper in (the) district, if a transfer would be in the interest of justice.'" Corke v. Sameiet M.S. Song of Norway, 572 F.2d 77, 80 (2d Cir. 1978) (quoting Volk Corp. v. ART-PAK Clip Serv., 432 F. Supp. 1179, 1180–81 (S.D.N.Y. 1977) (Weinfeld, J.)). "Moreover, courts have recognized that if transfer pursuant to 1404(a) is appropriate, then a fortiori transfer is appropriate under 1406(a), and that the crucial determination under either section is whether the proposed transfer is 'in the interest of justice.'" Posven, C.A. v. Liberty Mut. Ins. Co., 303 F. Supp. 2d 391, 400 n.3 (S.D.N.Y. 2004) (citations omitted).

5

Under Title 28, United States Code, Section 1332(a), the District of Puerto Rico would have had subject matter jurisdiction over this action due to the parties' diversity of citizenship and because the alleged amount in controversy exceeds $75,000.  (Cmplt. ¶ 6)  Puerto Rico would also have had personal jurisdiction over all defendants because they are residents of Puerto Rico (Cmplt. ¶¶ 9–11), and their actions, as alleged by Plaintiff, occurred in Puerto Rico. See Daly v. Castro Llanes, 30 F. Supp. 2d 407, 413 (S.D.N.Y. 1998) (finding "no reason why this action could not have been brought in the district of Puerto Rico which (1) would have personal jurisdiction over all the parties, (2) is the district in which at least two of the defendants reside, and (3) is where the funds at issue were supposed to have been maintained").  Further, given that all three Defendants reside in Puerto Rico, venue would have been proper there under Title 28, United States Code, Section 1391(a)(1), which provides that "a civil action wherein jurisdiction is founded only on diversity of citizenship may except as otherwise provided by law be brought in a judicial district where any defendant resides, if all defendants reside in the same state."

Accordingly, Ivy could have brought this case in the District of Puerto Rico.

### B.    Whether Transfer of Venue is Appropriate Under Section 1404(a)

After determining that "the action sought to be transferred is one that 'might have been brought' in the transferee court[,]" this Court "must determine whether, considering the 'convenience of parties and witnesses' and the 'interest of justice,' a transfer is appropriate." Berman v. Informix Corp., 30 F. Supp. 2d 653, 656 (S.D.N.Y. 1998) (quotation omitted).  The movants have the "'burden of making out a strong case for a transfer.'"  Filmline (Cross Country) Prods., Inc. v. United Artists Corp., 865 F.2d 513, 521 (2d Cir. 1989) (quotation omitted).  See Schieffelin & Co. v. Jack Co. of Boca, Inc., 725 F. Supp. 1314, 1321 (S.D.N.Y.

6

1989) ("The moving party must make a clear-cut showing that transfer is in the best interests of the litigation.").

"In determining whether transfer is warranted 'for the convenience of the parties and witnesses [and] in the interest of justice' under § 1404(a), courts generally consider several factors" including:

> (1) the convenience of witnesses, (2) the convenience of the parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances.

Berman, 30 F. Supp. 2d at 657. See Fuji Film Co., Ltd. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006) (listing same nine factors) (citing Berman, 30 F. Supp. 2d at 657). Each of these "interest of justice" factors is discussed below.

1. The Convenience of the Witnesses Favors Transfer

    a. Applicable Law

"[O]f the nine 'convenience' factors[,] [t]he first of these – the convenience of witnesses – is generally considered the most important." In re Collins & Aikman Corp. Sec. Litig., 438 F. Supp. 2d 392, 395 (S.D.N.Y. 2006). See also American Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge North America, Inc., 474 F. Supp. 2d 474, 483 (S.D.N.Y. 2007) ("Some courts have found the convenience of witnesses to be the most important factor in a motion to transfer."). "When assessing the convenience of witnesses, a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum." Herbert Ltd. P'ship v. Electronic Arts Inc., 325 F. Supp.2d 282, 286 (S.D.N.Y. 2004). "Instead, the court must qualitatively evaluate the

7

materiality of the testimony that the witnesses may provide." Id.  See Indian Harbor Ins. Co. v. Factory Mut. Ins. Co., 419 F. Supp. 2d 395, 404 (S.D.N.Y. 2005) ("[O]nly the material witnesses are afforded substantial weight in the balancing calculus.").  Moreover, "[t]he convenience of non-party witnesses is accorded more weight than that of party witnesses." Id. at 402; ESPN, Inc. v. Quiksilver, Inc., 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008) (same) (quoting Indian Harbor Ins. Co., 419 F. Supp. 2d at 402).  "For the purposes of this analysis, the Court dismisses from consideration the convenience of witnesses who are located outside both the current and transferee forums." Wechsler v. Macke Int'l Trade, Inc., No. 99 Civ. 5725 (AGS), 1999 WL 1261251, at *6 (S.D.N.Y. Dec. 27, 1999).

"To obtain a transfer based on convenience, the moving party must specifically list the witnesses on whom he intends to rely in the transferee district, along with a general statement of the topics on which each witness is expected to testify." Mears v. Montgomery, No. 02 Civ. 0407 (BSJ) (MHD), 2004 WL 964093, at *8 (S.D.N.Y. May 5, 2004).  See Schieffelin & Co., 725 F. Supp. at 1321 ("[T]he moving party must name the witnesses who will be appearing and describe their testimony so that the court may measure the inconvenience caused by locating a lawsuit in a particular forum."); Orb Factory Ltd. v. Design Sci. Toys Ltd., 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998) ("The movant must support the transfer application with an affidavit containing detailed factual statements relevant to the factors to be considered by the court in its transfer decision, including the potential principal witnesses expected to be called and a general statement of the substance of their testimony.") (internal quotation marks and alterations omitted).

  b. Legal Analysis

Here, Defendants have demonstrated that the District of Puerto Rico would be more convenient for three material witnesses – including two non-party witnesses, Henry

Neumann and Todd Washington – while Plaintiff has shown only that transfer would inconvenience its principals.

Defendants assert that Henry Neumann and Todd Washington – both residents of Puerto Rico – are non-party witnesses who will provide critical testimony concerning Plaintiff's claims. (Transfer Mot. ¶ 22(c)) Neumann, now the Secretary of the Department of Sports and Recreation of Puerto Rico and formerly the president of BSN, has provided a declaration detailing his expected trial testimony. Neumann states that Ivy provided BSN with a generic presentation that Ivy intended to present to athletic apparel companies, but never indicated that it had "concluded any agreement(s) nor that it had negotiated terms and conditions of any agreement in principle." (Neumann Decl. ¶ 12) According to Defendants, Washington – whom Plaintiff alleges was a consultant for the Federation and was instrumental in obtaining the BSN/Brand Jordan sponsorship deal (Cmplt. ¶¶ 33–38) – has critical testimony concerning both the contract and the tortious interference claims. (See Transfer Mot. ¶¶ 22(c), 22(d); Roberts Aff. ¶¶ 13-18) Defendants also provide a declaration from Jorge Francisco Rodriguez, a member of the Federation's Board of Governors since 2005 and its current Secretary. (Rodriguez Decl. ¶ 2) Rodriguez avers that the Federation neither interfered with any "contractual relationship" between Ivy and BSN nor "authorized anyone to interfere on its behalf." (Id. ¶ 9)

Ivy responds with a list of eight witnesses and brief descriptions of their alleged involvement in this dispute. (Pltf. Br. 4–5) Two of these witnesses – J. Michael Roberts, a Partner and CEO of Ivy since its creation in 2003 (Roberts Aff. ¶ 1), and RaShan Hilson, a Partner and President of Ivy (Hilson Aff. ¶ 1) – are officers of Plaintiff and appear to reside in New York. With respect to the remaining six witnesses, however, Ivy provides no residence information. For example, Ivy lists witnesses from Brand Jordan, such as "Gary Cook," "Roman

9

Vega," and "Dale Allen," who allegedly have information regarding the negotiations between BSN and Brand Jordan.  (Pltf. Br. 4–5)  But Brand Jordan is a division of Nike, an Oregon corporation with its principal place of business in Oregon (Transfer Mot., Ex. 1 at 1), and Plaintiff provides no evidence that these witnesses reside anywhere other than Oregon.  Similarly, Plaintiff provides no evidence that New York is a more convenient forum than Puerto Rico for its other non-party witnesses – Calvin Andrews, Richard Lucas, and Michael Jordan.  (Pltf. Br. 4–5)  Based on Plaintiff's submission, this Court cannot find that a trial in Puerto Rico would be more inconvenient for these non-party witnesses than a trial in New York.  See Wechsler, 1999 WL 1261251, at *6 (dismissing "from consideration the convenience of witnesses who are located outside both the current and transferee forums").

Accordingly, Defendants have shown that the convenience of the witnesses – particularly that of critical non-party witnesses Neumann and Washington – favors transfer to Puerto Rico.

### 2. The Convenience of the Parties is a Neutral Factor

Ivy is a New York limited liability company with its principal place of business in New York.  (Cmplt. ¶ 8)  Defendants BSN and the Federation are Puerto Rico not-for-profit corporations, each with its principal and only place of business in Puerto Rico.  (Transfer Mot. ¶¶ 1, 3)  Defendant Rivera resides in Puerto Rico and is a former president of BSN.  (Cmplt. ¶ 11; Ans. ¶ 9)  Given that it would be most convenient for Ivy to litigate this action in New York and most convenient for Defendants to litigate in Puerto Rico, this Court finds that one side or the other will be inconvenienced no matter where this case proceeds.  Accordingly, this factor is neutral.

### 3. The Location of Relevant Documents and Relative Access to Sources of Proof is a Neutral Factor

The location of documents is not a factor given great weight in a Section 1404(a) analysis. See Oubre v. Clinical Supplies Mgmt., Inc., No. 05 Civ. 2062 (LLS), 2005 WL 3077654, at *3 (S.D.N.Y. Nov. 17, 2005) ("In today's era of photocopying, fax machines, Federal Express, and electronic document transmission, the location of documents is entitled to little weight unless the movant makes a detailed showing of the burden it would incur absent transfer.") (quotation omitted); Age Group Ltd., 2007 WL 2274024, at *5 ("The location of documents is not a particularly persuasive factor absent a showing that such documents are especially difficult to transport or that transfer will bring necessary documents within the subpoena power of the transferee court.") (citations omitted).

Here, Defendants do not argue that any necessary documents are in Puerto Rico. Ivy contends, however, that the documents it intends to introduce at trial are found in New York. (Pltf. Br. 4) But Ivy fails to provide details regarding which documents are in New York or why transporting these documents to Puerto Rico would inconvenience Ivy. Thus, this factor is neutral.

### 4. The Locus of Operative Facts Favors Transfer

"The location of the operative facts is traditionally an important factor to be considered in deciding where a case should be tried." 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 134 (S.D.N.Y. 1992). "To determine the locus of operative facts, a court must look to the site of the events from which the claim arises." AVEMCO Ins. Co. v. GSV Holding Corp., No. 96 Civ. 8323 (LAP), 1997 WL 566149, at *6 (S.D.N.Y. Sept 11, 1997) (citation and internal quotation marks omitted). "The locus of operative facts in a breach of contract case looks at 'where the contract was negotiated or executed, where it was to be

11

performed, and where the alleged breach occurred.'" Reinhard v. Dow Chemical Co., No. 07 Civ. 3641 (RPP), 2007 WL 2324351, at *6 (S.D.N.Y. Aug. 13, 2007) (quoting Prudential Sec. Inc. v. Norcom Dev., Inc., No. 97 Civ. 6308 (DC), 1998 WL 397889, at *4 (S.D.N.Y. July 16, 1998)). With respect to tort claims, courts often look to the place where the events at issue occurred (see, e.g., Kwatra v. MCI, Inc., No. 96 Civ. 2491 (DC), 1996 WL 694444, at *3 (S.D.N.Y. Dec. 4, 1996)), and "for § 1404(a) purposes[,]" "venue analysis may determine that there are several loci of operative facts." Adams v. Key Tronic Corp., No. 94 Civ. A0535 (MBM), 1997 WL 1864, at *4 (S.D.N.Y. Jan. 2, 1997).

Here, as to the tortious interference claims against the Federation and Rivera, Ivy's submissions indicate that Brand Jordan representative Garry Cook and Rivera met in Puerto Rico in November 2007, met again in Oregon in December 2007, and that BSN and Brand Jordan completed their agreement in the Bahamas in January 2008. (Roberts Aff., Exs. E, F; see Cmplt. ¶ 34) There is no evidence that any act significant to the tortious interference claim took place in New York.

With regard to BSN and the breach of contract claim, the locus of operative facts is Puerto Rico, because the Representation Agreement was negotiated and executed there, BSN's alleged breach likely would have occurred in Puerto Rico, if anywhere, and Plaintiff has provided few details as to where it allegedly performed the Representation Agreement. Ivy does not dispute Defendants' claim that all of the negotiations for the Representation Agreement occurred in Puerto Rico, and it is likewise undisputed that Ivy and BSN executed the Representation Agreement in Puerto Rico. (Transfer Mot. ¶¶ 5, 11(b); Neumann Decl. ¶ 9)

With respect to performance of the contract, the Representation Agreement provided that Ivy would "represent, advise, counsel, and assist . . . BSN in the negotiation,

12

execution, and enforcement of all licensing . . . and marketing partnership agreements <u>originating outside of Puerto Rico</u>."  (Cmplt., Ex. A ¶ 1 (emphasis added))  Pursuant to the Representation Agreement, Ivy contends that it negotiated in principle the contract that BSN ultimately entered into with Brand Jordan.  (<u>See</u> Cmplt. ¶¶ 44–45)  Specifically, Ivy alleges that in March 2007 it presented the BSN proposition to Howard White, Vice President of Brand Jordan.  (Cmplt. ¶ 27)  Ivy also alleges that Richard Lucas – acting on Ivy's behalf – presented the BSN proposals to Garry Cook, Brand Jordan's General Manager of International Affairs.  (<u>Id.</u>)  Ivy, however, provides no information regarding the location of these meetings or of any other negotiations that Ivy had with Brand Jordan while representing BSN.  Although Ivy appears to have prepared PowerPoint presentations for these meetings, and may have done so while in New York, that is plainly insufficient to make New York the locus of operative facts for the contract claims, given that much more substantial activity occurred outside of this District.

In addition, Ivy alleges that BSN breached the Representation Agreement by refusing to pay Ivy "thirty five (35%) of the total value" of the BSN-Nike Agreement, which Ivy claims to have negotiated in principle.  (<u>See</u> Cmplt. ¶¶ 44–45)  Assuming <u>arguendo</u> that BSN has so breached the contract, its breach occurred in Puerto Rico.  Even if Ivy felt the effects of that breach in New York, that is not enough to shift the locus of operative facts for the breach of contract claims.

Accordingly, for both the contract and tort claims, Puerto Rico is the forum that "bears a much more intimate connection to the events underpinning this case than does New York," <u>see</u> <u>In re Nematron Corp. Sec. Litig.</u>, 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1998), and thus this factor strongly favors transfer.

13

       5.       The Availability of Process to Compel the Attendance of
<u>Unwilling Witnesses is a Neutral Factor</u>

The availability of process to compel the attendance of a witness is a neutral factor here because neither party identifies a witness who would be unwilling to testify without compulsion.  See <u>Citigroup Inc. v. City Holding Co.</u>, 97 F. Supp.2d. 549, 562 (S.D.N.Y. 2000) ("The force of this factor is also diminished somewhat because [Defendant] has not shown, or even suggested, that the two third party witnesses it identified would be unwilling to testify in a New York court without the prodding of a subpoena.").  Furthermore, the parties do not explain why a deposition could not substitute for the live testimony of the inconvenienced witness.  See <u>Ernes N.V. v. Citgo Asphalt Ref. Co.</u>, No. 08 Civ. 7313 (VM), 2009 WL 734029, at *7 (S.D.N.Y. Mar. 16, 2009) (finding the availability of process to compel witnesses a neutral factor because "there has been no indication that deposition testimony is not a viable alternative"); <u>Citigroup, Inc.</u>, 97 F. Supp. 2d at 562 ("[T]he unavailability of process over third-party witnesses does not compel transfer when the practical alternative of offering videotaped or deposition testimony of a given witness exists.").

       6.       <u>The Relative Means of the Parties is a Neutral Factor</u>

In analyzing whether the relative means of the parties favors transfer, a court should determine whether a party's "financial situation would meaningfully impede its ability to litigate this case in either forum."  <u>In re Collins & Aikman Sec. Litig.</u>, 438 F. Supp. 2d at 397.  "[T]his factor has 'rarely been a dispositive reason' to grant or deny a transfer motion" and is not so here.  <u>Schoenefeld v. New York</u>, No. 08 Civ. 3269 (NRB), 2009 WL 1069159, at *3 (S.D.N.Y. Apr. 16, 2009) (quotation omitted).  Both sides have portrayed themselves as struggling financially, but given that no party has provided specific information concerning its assets and resources, the relative means of the parties is a neutral factor.

### 7. Forum's Familiarity with Governing Law

Paragraph 10 of the Representation Agreement contains the following governing law provision: "[t]his agreement shall be governed in all respects in accordance with the laws of New York (with the exception of any conflict of law rules with Puerto Rico)." (Cmplt., Ex. A ¶ 10)  What the parties intended by entering into an agreement containing this language is not entirely clear.

If the parties had entered into an agreement clearly providing that New York law applied, that fact would – to a limited extent – support retention, because "presumably, courts in New York are more familiar with New York substantive law than are courts [elsewhere]." First Fed. Savings Bank v. Tazzia, 696 F. Supp. 904, 910 (S.D.N.Y. 1988).  See also NBA Props. v. Salvino, Inc., No. 99 Civ. 11799 (AGS), 2000 WL 323257, at *9 (S.D.N.Y. Mar. 27, 2000) ("Where, as here, there are state law claims, the 'forum's familiarity with governing law' supports retention of the action.") (quotation omitted).  "[T]his Court has routinely held that the 'governing law' factor is to be accorded little weight on a motion to transfer venue[, however,] because federal courts are deemed capable of applying the substantive law of other states." Prudential Sec. Inc., 1998 WL 397889, at *6.

Here, it is not clear what the parties intended when they agreed that "[t]his agreement shall be governed in all respects in accordance with the laws of New York (with the exception of any conflict of law rules with Puerto Rico)." (Cmplt., Ex. A ¶ 10)  A standard formulation for such a clause is that New York law will govern "with the exception of New York's choice of law rules." See, e.g., Orix Fin. Servs., Inc. v. W.L. Holmes, No. 06 Civ. 3476 (SAS), 2007 WL 3143707, at *1 (S.D.N.Y. Oct. 26, 2007).  The language chosen here suggests that New York law governs disputes arising under the Representation Agreement except to the extent that New York has conflict of law rules specific to Puerto Rico.  Even if this Court

15

interprets the governing law clause as requiring application of New York law to the breach of contract claim, however, as noted above that provides only limited support for retaining this case. Prudential Sec. Inc., 1998 WL 397889, at *6.

With respect to tort claims, New York courts "seek to apply the law of the jurisdiction with the most significant interest in, or relationship to, the dispute." Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1539 (2d Cir. 1997). Similarly, "Puerto Rico . . . has approved the 'dominant or significant contacts' test for contract and tort actions[,]" under which "the laws of the jurisdiction with the most significant contacts to the disputed issues will apply." Allstate Ins. Co. v. Occidental Int'l., Inc., 140 F.3d 1, 3 (1st Cir. 1998). Here, given that the alleged tortious interference occurred in part in Puerto Rico – and not at all in New York – it appears that under either analysis Puerto Rico law may apply to the tortious interference claims against the Federation and Rivera.

### 8. Plaintiff's Choice of Forum Favors Retention

Generally, a plaintiff's choice of forum is "a decision given great weight" in the context of a Section 1404(a) transfer motion. See D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 107 (2d Cir. 2006). Nonetheless, "a plaintiff's choice of forum is given less weight where the case's operative facts have little connection with the chosen forum." 800-Flowers, Inc., 860 F. Supp. at 134. Here, Ivy's choice of New York is not entitled to great weight because the locus of operative facts is Puerto Rico.

### 9. Trial Efficiency is a Neutral Factor

Neither side has offered arguments regarding docket congestion in the Southern District of New York or the District of Puerto Rico. See Eichenholtz v. Brennan, 677 F. Supp. 198, 202 (S.D.N.Y. 1988) ("The relative docket conditions of the transferor and transferee courts are relevant to the determination of a motion to transfer venue pursuant to 28 U.S.C. §

16

1404(a)."). Moreover, there is no indication that Plaintiff has engaged in forum-shopping, that a related action exists in either New York or Puerto Rico, or that transfer might lead to a more expeditious resolution of the dispute. See Williams v. City of New York, No. 03 Civ. 4342 (RWS), 2006 WL 399456, at *3 (S.D.N.Y. Feb 21, 2006) ("[C]ourts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy, and may be determinative.); Designs By Glory, Ltd. v. Manhattan Creative Jewelers, Inc., 657 F. Supp. 1257, 1259–60 (S.D.N.Y. 1987) (Weinfeld, J.) (including in the interest of justice factors "the practical problems indicating where the case can be tried more expeditiously and inexpensively"). Accordingly, this factor is neutral.[4]

### C. Conclusion: Transfer is Appropriate Under Section 1404(a)

Despite the deference traditionally owed to Plaintiff's choice of forum, this Court finds that the convenience of the witnesses and the locus of operative facts strongly favor transfer. Accordingly, this Court concludes that it is in the interest of justice to transfer this action to the District of Puerto Rico.

---

[4] Plaintiff also asserts that this action should stay in New York because of a language barrier in Puerto Rico. (Pltf. Br. 6) This argument is entitled to no weight; the transferee court's official web site unambiguously states that, "[a]ll official business of the U.S. District Court for the District of Puerto Rico is conducted in English." See http://www.prd.uscourts.gov/CourtWeb/a_faq_interpreters.aspx.

## CONCLUSION

For the foregoing reasons, Defendants' motion to transfer this action to the United States District Court for the District of Puerto Rico, pursuant to 28 U.S.C. § 1404(a), is GRANTED. The Clerk of the Court is directed to terminate Defendants' motion (Docket No. 24) and to transfer this action to the District of Puerto Rico.

Dated: New York, New York
July 28, 2009

SO ORDERED.

*Paul G. Gardephe*
Paul G. Gardephe
United States District Judge